UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

A.B.,

    Plaintiff,

v.                                          Case No. 8:20-cv-00353

SCHOOL BOARD OF
HILLSBOROUGH COUNTY, FLORIDA,

    Defendant.

_____/

## COMPLAINT

Plaintiff, A.B., by and through her undersigned counsel, files this Complaint against Defendant, School Board of Hillsborough County and shows as follows:

## INTRODUCTION

1. This action arises under the Individuals with Disabilities Act, 20 U.S.C. § 1400 et seq. (hereinafter "IDEA").

2. This is an original civil action, seeking reversal of the Final Order, dated November 15, 2019, of a Florida Administrative Law Judge (hereinafter "ALJ"), a true and correct copy of which is attached hereto as Exhibit A.

3. Plaintiff is a minor child and a student with disabilities who is eligible for special education and is entitled to the services and protections of the IDEA.

4. Plaintiff is an aggrieved person based on the decision of an administrative action following Plaintiff's request for due process and an administrative hearing with Florida's Division of Administrative Hearings (hereinafter "DOAH").

5      Defendant has failed to comply with its obligations under federal and state law to provide Plaintiff with a Free and Appropriate Public Education (hereinafter "FAPE") by failing to provide an IEP with appropriate transportation as a related service to meet her unique needs.

## PARTIES

6.      At all times relevant herein, Plaintiff, A.B., has resided in Brandon, a city in Hillsborough County within the boundaries of the School District of Hillsborough County, Florida. Plaintiff has been, and continues to be, eligible to receive special education and related services pursuant to the IDEA.

7.      Defendant, School Board of Hillsborough County, Florida is a public entity organized and existing under the laws of the State of Florida, with the capacity to be sued. Defendant is a local educational agency (hereinafter "LEA") as defined by 20 U.S.C. § 1401(19)(A) and 34 C.F.R. § 330.28, and by virtue of receipt of federal funding, is required to comply with the provisions of the IDEA. As an LEA, Defendant is required to make available a FAPE to Plaintiff. FAPE is defined as special education services that: (A) have been provided at public expense, under public supervision and direction, and without charge; (B) meet the standards of the State educational agency; (C) include appropriate preschool, elementary school, or secondary school education in the State involved; and (D) are provided in conformity with the Individualized Education Program (hereinafter "IEP") under 20 U.S.C. § 1414(d). 20 U.S.C. § 1401(9).

## JURISDICTION AND VENUE

8.      This is a civil action over which this Court has original jurisdiction under 28 U.S.C. § 1331 in that it arises under the IDEA as amended, 20 U.S.C. § 1400 et seq. Jurisdiction is expressly vested in this Court pursuant to 20 U.S.C. § 1415(i)(3)(A) and 29 U.S.C. § 1331.

This Court has jurisdiction to hear pendent state claims under the doctrine of supplemental jurisdiction set forth at 28 U.S.C. § 1367.

9. Venue in this Court is proper under 20 U.S.C. § 1391(b) because the Defendant is located within Hillsborough County, which is within the jurisdiction of this judicial district, and all of the events or omissions that are the subject of this complaint occurred in Hillsborough County.

10. This Complaint is brought seeking relief for denial of rights under the IDEA. 20 U.S.C. § 1400 et seq. and Florida's Special Educational Law, § 1003.57 Fla. Stat.

11. This case comes to this Court pursuant to 20 U.S.C. § 1415 (i)(2)(A) following a Final Order of an ALJ rendered on November 15, 2019 in a due process action brought by Plaintiff on March 26, 2019 through DOAH under Docket number 19-1627E.

## PROCEDURAL HISTORY

12. Pursuant to 20 U.S.C. §§1415(b)(6) and 1415(f)(1), whenever there is a disagreement between the parents and a school district regarding the identification, evaluation, or educational placement of the child, or the provision of a FAPE to the child, either party may present a complaint to be heard in an impartial administrative proceeding known as a "due process hearing," conducted by the state educational agency.

13. As required by the IDEA, Florida established an impartial due process hearing procedure under a contract with the Division of Administrative Hearings ("DOAH") for the State of Florida. §§1003.57(1)(b) and 1003.5715(5), Florida Statutes, and Florida Administrative Code Rule 6A-6.03311(9)(u).

14. On March 25, 2019, Plaintiff filed a request for a due process hearing that raised procedural and substantive claims pursuant to the IDEA. Plaintiff's request was promptly

forwarded to DOAH for further proceedings. Among other things, the Plaintiff requested the following relief: an appropriate IEP to meet Plaintiff's unique needs, including home door transportation.

15. A due process hearing was held before DOAH on August 29, 2019. On November 15, 2019, Administrative Law Judge ("ALJ") Todd P. Resavage issued a Final Due Process Order (hereinafter "Order"). A copy of the Order was served on Plaintiff's representative on November 15, 2019.

16. The Order held that Plaintiff's IEP, which failed to provide home door transportation to Plaintiff, provided a FAPE under the IDEA.

## FACTUAL ALLEGATIONS

17. At the time the due process was filed, Plaintiff was a fifth-grade student at one of Defendant's elementary schools.

18. Presently, Plaintiff is a sixth-grade student at one of Defendant's middle schools.

19. Plaintiff was born in 2008 and has been diagnosed with Spina Bifida with Hydrocephalus. She has certain visual deficits, a neurogenic bladder, and a Ventriculo-Peritoneal Shunt, which allows drainage of fluid within the skull to the abdominal cavity to prevent an increase in intracranial pressure. She is incontinent of bowel and bladder and wears diapers. She has paralysis in her lower limbs and is reliant on a wheelchair for mobility.

20. At all times relevant herein, Plaintiff was, and continues to be, eligible for and receiving special education including specially designed instruction and related services under the eligibility categories of Orthopedic Impairment and Language Impairment. Plaintiff's IEP also reflects that she has a significant cognitive disability.

21. As a result of her Spina Bifida, Plaintiff has a weakened immune system and temperature instability. She cannot tolerate exposure to harmful elements such as the sun and hot and cold weather.

22. Plaintiff has the ability to propel her wheelchair but requires adult supervision and prompting. She also experiences anxiety or hesitancy in propelling the wheelchair long distances, over separations in the sidewalks, and changes in elevation.

23. Plaintiff requires constant adult supervision for safety in the community because she requires monitoring for her medical conditions, does not respond to safety directions, and is unable to communication information about herself in an emergency situation.

24. Plaintiff's IEP dated April 2, 2018 indicated that she required specialized transportation to and from school daily due to her medical equipment, namely her wheelchair.

25. The IEP team completed a Specialized Transportation Documentation Form, which is part of Plaintiff's IEP, at the April 2, 2018 meeting. The form, which was signed by the parent, provides that Plaintiff requires a lift in order for her to gain access to the bus, that Plaintiff uses a parent-provided manually operated wheelchair, and that Plaintiff requires an aide or monitor on the bus because she is unable to communicate information about herself in an emergency situation. It also indicates that Plaintiff requires adult supervision at the bus stop and that a parent or adult designee must meet the Plaintiff at the bus stop. The form does not specifically mention "home door" or "door-to door" transportation.

26. At the time of the April 2, 2018 IEP meeting, Plaintiff lived in a house that was on a public road and had neither a parking lot, nor gate access to navigate. Based on her address, the Defendant was able to assign Plaintiff a home stop location, which provided for home door

transportation. At some point during the 2018-2019 school year, Plaintiff relocated to an apartment complex.

27. Subsequent to Plaintiff's relocation, Plaintiff's parent requested an IEP meeting because Defendant issued Plaintiff a new bus stop that was not her home address, did not provide home door transportation, and was approximately 800 feet away from the center of Plaintiff's apartment building, near a dangerous stop sign pathway.

28. The new stop required Plaintiff to navigate from her home to the bus stop, 800 feet away and over two speed humps. This increased Plaintiff's exposure to the elements and created unnecessary wear and tear of her expensive wheelchair. Due to Plaintiff's need for supervision and assistance with propelling her wheelchair, it was necessary for Plaintiff's parent to accompany and assist Plaintiff to and from the bus stop.

29. The IEP team convened, per the parent's request, on October 11, 2018. The IEP team did not make any changes to the related services section of the IEP with respect to transportation. However, the IEP team did complete an updated Specialized Transportation Form, which stated the parent's concerns about the bus stop and stated that the IEP team agreed that Plaintiff needed to be picked up directly from her home door to ensure her safety.

30. In spite of this documentation, the Defendant continued to decline to provide home door transportation to the Plaintiff.

31. subsequent IEP meeting took place on January 25, 2019. The IEP team acknowledged that Plaintiff had home door service at her previous residence. Discussion at the meeting centered around Defendant's transportation policies, but there was no discussion at the meeting about Plaintiff's unique needs or changes to her unique needs that would warrant a change from home door transportation.

32. Defendant's policies and practices provide that buses may be prohibited by Defendant from entering apartment-complex parking lots, which was the case in this situation.

33. The transportation representatives at the January 25, 2018 meeting scheduled a time to review the newly assigned stop, observe Plaintiff navigating the bus stop, and to address the parent's safety concerns. That observation occurred on or about January 29, 2019. The observation noted that the bus driver had unofficially altered the new bus stop to a location that was 253 feet away from Plaintiff's apartment residence.

34. A follow up IEP meeting occurred on March 7, 2019 wherein the parent reiterated her concerns about the new bus stop. The Defendant determined at the meeting that the current, bus-driver-created bus stop was appropriate despite the parent's concerns about safety and navigating Plaintiff's wheelchair to the new bus stop in inclement weather.

35. Defendant declined the parent's request to develop an IEP to meet Plaintiff's well-established need for home door transportation through the use of a smaller vehicle, small bus, or van. Instead, the Defendant revised the Specialized Transportation Form to reflect that Plaintiff "requires a stop location in close proximity to her home."

36. Under the current IEP, Plaintiff, who is in a wheelchair, who, because of a severe cognitive disability, cannot appreciate the dangers she will face on the way to and from the bus stop, who requires constant supervision by an adult to navigate to and wait at the bus stop, and who has complex medical needs that render her susceptible to outdoor elements, is forced to travel 253 feet or more to catch a bus to get to school for the sake of Defendant's administrative convenience.

## IDEA-ADMINISTRATIVE APPEAL TO COURT

### Standard of Review

37. Pursuant to the IDEA, "in any civil action brought under this paragraph the court: (i) shall receive the records of the administrative proceedings; (ii) shall hear additional evidence at the request of the party; and, (iii) basing its decision on the preponderance of the evidence, shall grant relief as the court determines is appropriate. 20 U.S.C. § 1415(i)(2).

38. The district court is to conduct a *de novo* review of the ALJ's findings, and the "IDEA specifically provides that the court may take additional evidence and may fashion relief that the court deems appropriate." *Sch. Bd. of Collier County v. K.C.,* 285 F.3d 977, 980 (11th Cir. 2002) (citing *Weiss v. Sch. Bd. of Hillsborough County,* 141 F.3d 990, 991-92 (11th Cir. 1998); 20 U.S.C. § 1415(i)(2)(B)). Whether a school district has satisfied the requirements of the IDEA by providing a FAPE is a mixed question of law and fact. *R.L. v. Miami-Dade County School Bd.*, 757 F.3d 1173, 307 Ed. Law Rep. 596 (11th Cir. 2014).

39. While a court, reviewing an administrative decision in an IDEA suit must consider the administrative findings carefully and endeavor to respond to the hearing officer's resolution of each material issue, the court is free to reject the administrative findings in whole or in part. *Id.* at 1181 (citing "*G.J. v. Muscogee Cnty. Sch. Dist.,* 668 F.3d 1258, 1268 (11th Cir.2012)).  At the same time, courts "owe some judicial deference to local administrative agency judgments ... though that's typically limited to matters calling upon educational expertise." *Loren F. ex rel. Fisher v. Atlanta Independent Sch. Sys.*, 349 F.3d 1309, 1314 (11th Cir. 2003). Thus, in deferring to the ALJ, the district court should review the records of the state administrative proceedings. *Id.* at 1314 (citing 20 U.S.C. § 1415(i)(2)(B)(i)).

**Legal Claims**

40. District school boards are required by the "Florida K-20 Education Code"[1] to "[p]rovide for an appropriate program of special instruction, facilities, and services for exceptional students as prescribed by the State Board of Education as acceptable." §§ 1001.42(4)(l) and 1003.57, Fla. Stat.

41. The "Florida K-20 Education Code's" imposition of such a requirement is necessary in order for the State of Florida to be eligible to receive federal funding under the Individuals with Disabilities Education Act, 20 U.S.C. §§ 1400 et seq.

42. The IDEA ensures that all children with disabilities receive a FAPE with emphasis on special education and related services designed to meet their unique needs. 20 U.S.C. §1400 (d)(1)(A).

43. In enacting the IDEA, Congress sought to "ensure that all children with disabilities have available to them a free appropriate public education that emphasized special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living." 20 U.S.C. §1400 (d)(1)(A); *Phillip C. v. Jefferson Cnty. Bd. of Educ.*, 701 F. 3d 691, 694 (11th Cir. 2012). The statute was intended to address the inadequate educational services offered to children with disabilities 20 U.S.C. §1400 (c)(2). To accomplish this objective, the federal government provides funding to participating state and local agencies which is contingent on the agency's compliance with the IDEA's procedural and substantive requirements. *Doe v. Alabama State Dep't of Educ.*, 915 F. 2d 641, 654 (11th Cir. 1990).

---

[1] Chapters 1000 through 1013, Florida Statutes.

44. The IDEA's FAPE mandate is found in 20 U.S.C. §1401(9), which provides that districts must provide students with:

> [S]pecial education services that-
> (A) have been provided *at public expense, under public supervision and direction*, and without charge;
> (B) meet the standards of the State educational agency;
> (C) include an appropriate preschool, elementary school, or secondary school education in the State involved; and
> (D) are provided in conformity with the individualized education program required under 20 U.S.C. §1414(d).
> 20 U.S.C. §1401 (9)(emphasis added).

45. Under the IDEA, a "free appropriate public education" (FAPE) consists of "special education" and, when necessary, "related services." See 20 U.S.C. § 1401(9). The term "related services," as used in the IDEA, includes "transportation." 20 U.S.C. § 1401(26)(A); *See also* 34 C.F.R. § 300.34.

46. The IDEA ensures a FAPE for each child through the requirement that districts develop and implement an IEP. 20 U.S.C. §1401(9)(D); *Sch. Comm. Of Burlington v. Dep't of Educ.*, 471 U.S. 359, 368 (1985)("The modus operandi of the [IDEA] is the . . . IEP.")(internal quotation marks omitted).

47. Districts also have an obligation under the IDEA to ensure "that the parents of each child with a disability are members of any group that makes decisions on the educational placement of their child." 20 U.S.C. §1414(e).

48. Further, parents and children with disabilities are accorded substantial procedural safeguards to ensure that the purposes of the IDEA are fully realized. *See Bd. of Educ. Of Hendrick Hudson Cent. Sch. Dist. V. Rowley*, 458 U.S. 176, 205-06 (1982). Among other protections, parents are entitled to the right to be involved in the educational placement of their child and to file an administrative due process complaint "with respect to any matter relating to the identification,

evaluation, or educational placement of [their] child, or the provision of a free appropriate public education to such child." 20 U.S.C. §1415(b)(1), (b)(3), (b)(6).

49. The existing case law is clear that if a student's unique needs require that the Board provide transportation to the student then *the Board* is obligated to provide transportation to that student in a way that meets the student's needs. See \*\* v. Broward County School Board, DOAH Case No. 13-0577E, http://www.fldoe.org/ core/fileparse.php/10992/urlt/13-0577redacted.pdf.

50. Courts have held that a student is entitled to door-to-door transportation as a related service if the child does not appreciate dangers they might encounter between his or her home and the bus stop. *Fort Sage Unified Sch. Dist. V. Lassen County Office of Education*, 23 IDELR 1078 (SEA CA 1995). In *Fort Sage,* the Court found that an eleven-year-old student with an intellectual disability who was functioning at a kindergarten or first grade level was entitled to door-to-door transportation. In that case, the student had always received door-to-door bus transportation prior to the year in question, although, according to the court in that case, it was "not clear whether his IEPs provided for transportation as a related service." *Id*. The court found in that case that due to the student's developmental disability, he did not appreciate the dangers he might encounter while walking between his home and the bus stop. In addition, the court noted that the student should not be left waiting at the bus stop without adult supervision. *Id.* The tribunal in that case also opined that an unofficial school board policy that did not allow school buses to travel on dirt roads denied the ESE student transportation as a necessary related service *See id. See also Los Angeles Unified Sch. Dist*., 48 IDELR 83 (SEA CA 2007)(holding that even though the Board could not safely maneuver a school bus on a narrow, unpaved road on which an ESE student's home was located, the Board still was required to provide the student door-to-door transportation because that met the student's needs and a wheelchair-accessible van could be an option); *Shrewsbury v.*

*Bd. of Education*, 265 SE.2d 767 (W. Va. 1980)(holding that the Board was still required to provide transportation to students even though there was evidence that the road used could prove "somewhat dangerous" for an average school bus to traverse and the Board owned only one small bus. These were not legitimate defenses); *Norton Sch. Dist.* 21 IDELR 974 (SEA VT 1994)(holding that the Board must provide alternate means of transportation if the Board feels that its school bus cannot go to the student's home and turn around in her driveway and that a district's failure to obtain a medical evaluation of the student's need for transportation services was an IDEA violation); *Kennedy v. Bd. Of Education*, 557 IDELR 232 (W. Va. 1985), (determining that the school board could not escape its obligation to provide transportation to ESE students because of its safety concerns related to the poor conditions of the road on which the students lived.)

51. Further, if a child requires adult supervision at the bus stop as a part of his or her specialized transportation, schools generally cannot rely on parents to accompany and wait with their children at the bus stop. *See In re: Sara S.*, 507 IDELR 308 (SEA MA 1985). In *In re: Sara S.*, the court found that a district could not expect the parents of a 16-year-old student with down syndrome to accompany her in order to make it safe for her to traverse an otherwise unsafe path to her assigned bus stop. In fact, the court in that case held that the district's position was "wholly untenable and without legal justification. *Id.* This holding is in line with the IDEA's mandate that the education provide to a student be "provided *at public expense, under public supervision and direction, and without charge.*" 20 U.S.C. §1401 (9)(emphasis added).

52. The relative difficulty of the district in providing transportation accommodations is not to be considered in making a determination of the child's needs *See Acton-Boxborough Reg'l Sch. Dist.*, 65 IDELR 309 (SEA MA 2015) (finding that a student's disruptive behaviors and tendency to elope did not excuse the district's failure to provide him consistent door-to-door

transportation); and *Colorado River (AZ) Union High Sch. Dist.,* 67 IDELR 101 (OCR 2015) (investigating claims that a district denied a student the < door-to-door transportation > required in his IEP because his family lived in a gated community).

53. In *Maynard Sch. Dist.*, 20 IDELR 394 (SEA AR 1993), the court considered the IDEA's protections for students who require transportation as a related service and found that "it is not the responsibility of parents to make necessary transportation accommodations, unless they desire and voluntarily do so." *Id.* As the court stated in *Anchorage School District v. N.S*:

> While it is true the guardians could hire somebody to push [the student] home from the curb every day, this consideration is not persuasive. Financial considerations aside, a disabled child's parents *always could* hire somebody to *complete* the *entire* transportation transaction. Basically, what the hearing officer did was to conclude that the district must complete the transportation transaction. Leaving [the student] in the driveway or at another supervised location does not do that. Given the facts and circumstances here, door-to-door service is the only option in the record which allows […] to enjoy the benefit of his special education.

2007 WL 8058163 (D. Alaska 2007) at *9 (emphasis in original).

54. Against this backdrop, the undersigned turns now to plaintiff's claims. In this case, like *Fort Sage,* the Plaintiff is an eleven-year-old student who is functioning at a much younger cognitive age. The Plaintiff's doctor, teachers, and parent in this case are all in agreement that she does not appreciate the dangers she will face on the way to or at the bus stop, and that she requires constant adult supervision to navigate to and wait at the bus stop. As in *Fort Sage*, and *In re: Sara S.*, the district in the case at hand cannot rely upon Plaintiff's parent to provide supervision to her on her way to or while she waits at the bus stop in order to make an otherwise unsafe stop appropriate for her.

55. In *Acton-Boxborough*, *Fort Sage*, *Los Angeles Unified Sch. Dist*, *Shrewsbury*, *Norton Sch. Dist.,* and *Kennedy*, the district could not refuse door-to-door transportation based on

district policies/practices that prevented school buses from going down certain roads. Similarly, in this case, the Defendant cannot rely on its policy/practice of not sending buses into a student's apartment complex as justification for its refusal to provide Plaintiff with home door transportation.

56. The Plaintiff requires "home door" transportation in order to receive a FAPE. Due to Plaintiff's medical diagnoses of Spina Bifida, Ventriculo-Peritoneal Shunt, Intellectual Disability, and Oral Phase Dysphagia, transportation is medically necessary. Plaintiff has a significant cognitive disability and is unable to navigate parking lots alone. Further, as a result of her Spina bifida, Plaintiff has a weakened immune system and temperature instability; she cannot tolerate exposure to harmful elements (sun, heat, or cold). Plaintiff's Spina Bifida has also caused paralysis of her lower limbs, and Plaintiff is wheelchair bound. In addition to her own inability to tolerate exposure to the elements, exposure to the elements increases the wear and tear on Plaintiff's wheelchair. Accordingly, Plaintiff's parent has requested that "home door" transportation be provided in order to meet Plaintiff's needs.

57. Transporting Plaintiff from her home to school and back, as provided for in Plaintiff's IEPs, is essential to Plaintiff's receiving a FAPE. By failing to ensure that Plaintiff's IEP was reasonably calculated to meet all her transportation needs, and by relying on the parent to provide supervision in route to and while waiting at Plaintiff's bus stop in order to make an otherwise unsafe stop appropriate for Plaintiff, the Defendant failed to provide her with an IEP that provided her with FAPE.

58. The team failed to come up with an IEP reasonably calculated to enable Plaintiff to receive educational benefits. In this case, as in *Fort Sage*, the home door transportation, which was previously provided to Plaintiff, is necessary as a part of her IEP, despite the District's failure to

appropriately document this necessity as a "related service" need under the applicable portion of its IEP. The Defendant was able to meet Plaintiff's needs, despite this procedural violation, but ultimately, the team assigned Plaintiff to a location in "close proximity" to her house rather than her front door, despite Plaintiff's need for home door transportation as a result of her disability.

59. The Defendant failed to consider alternative methods of providing transportation to Plaintiff, and, instead, placed the burden of transporting Plaintiff to the bus stop on Plaintiff's parent.

60. The Plaintiff requires "home door" transportation as that term is contemplated in the Plaintiff's Due Process Complaint in order to receive a FAPE. The Plaintiff's IEP does not adequately address the Plaintiff's individualized needs in the area of specialized transportation as a related service. Plaintiff's parent presented substantial medical evidence as to Plaintiff's need for home door transportation. Multiple witnesses also testified that Plaintiff cannot navigate to, or remain at, the bus stop without supervision. Although the Defendant has provided some degree of specialized transportation in this case, the transportation that the Defendant has provided to the Plaintiff is not appropriate to meet her needs.

61. The law supports a finding in favor of the Plaintiff and the ALJ erred when he failed to find in the Plaintiff's favor. The ALJ erroneously relied upon and gave deference to the Defendant's local policies rather than federal law.

## CLAIM FOR RELIEF

62. Plaintiff has exhausted her administrative remedies and is a party aggrieved by the Order within the meaning of 20 U.S.C. § 1415(i)(2)(A). Plaintiff is seeking reversal of the Order.

63. The ALJ erred in holding that Plaintiff's IEP, as amended by Defendant at the March 7, 2019 IEP meeting, provided a FAPE under the IDEA.

64. It is evident from the Order that the ALJ did not rely on well-settled law interpreting the Defendant's obligations under the IDEA to provide home door transportation to meet the unique needs of Plaintiff. Rather, the ALJ deferred to Defendant's policies and practices that are inconsistent with IDEA's mandate to provide an IEP that meets the unique needs of students.

65. The Plaintiff requests that this Court enter an Order requiring that the Administrative Record, i.e., the Briefs, Due Process Exhibits, Transcripts, and the Due Process Order, be filed with the Court.

66. The Plaintiff respectfully request that this Court:

    a. Reverse the November 15, 2019 order and declare that Plaintiff's current IEP fails to provide a FAPE.

    b. Declare that the Plaintiff is the prevailing party and entitled to an award of reasonable costs and attorney's fees pursuant to 20 U.S.C. 1415(i)(3).

    c. Award Plaintiff any and all other appropriate relief under the IDEA.

Respectfully submitted,

Lauren Brittany Eversole, Esq.
Florida Bar No. 120245
*laurene@disabilityrightsflorida.org*
DISABILITY RIGHTS FLORIDA, INC.
2473 Care Drive, Suite 200
Tallahassee, Florida 32308
Phone: 850-488-9071
Fax: 850-488-8640

Ann Marie Cintron-Siegel, Esq.
Florida Bar No. 0166431
*anns@disabilityrightsflorida.org*
DISABILITY RIGHTS FLORIDA, INC.
1930 Harrison Street, Suite 104
Hollywood, FL 33020
Phone: 850-488-9071
Fax: 850-488-8640

*Attorneys for Plaintiff*

By: *Lauren Brittany Eversole*
    Lauren Brittany Eversole

By: *Ann Marie Cintron-Siegel*
    Ann Marie Cintron-Siegel

CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been furnished to counsel of record for Defendant, LaKisha Kinsey-Sallis, Esq. via email electronic mail on this 13th day of February 2020.

Respectfully submitted,

/s/Lauren Brittany Eversole
Lauren Brittany Eversole, Esq.
Florida Bar Number: 120245
Disability Rights Florida
Counsel for Appellant
2473 Care Drive, Suite 200
Tallahassee, FL 32308
Telephone: (850) 617-9702
Fax: (850) 558-5664
laurene@disabilityrightsflorida.org